## IMPLIED WARRANTY OF A SELLER OF FOOD PRODUCTS.

Court of Appeals for Morgan County.

BOYD KEAN V. DELBERT BACHELOR.

Decided, May 14, 1915.

*Sale of Unwholesome Food—Civil Action for Damages—Rules of Evidence Not Affected by the Criminal Statute—Eggs Not Inspected Until Four Days After Delivery.*

1. The criminal statute relating to the sale of unwholesome provisions in no way changes the established rules of evidence or the proof required in cases where damages are sought on account of the sale and delivery of food products in a condition unfit for use.
2. The implied warranty of the seller, in the case of the sale of eggs, is not available as the basis of an action by the purchaser who received and shipped the eggs without inspection and which were found upon inspection four days later to be unfit for use.

*M. E. Danford,* for plaintiff in error.
*C. C. Middleswart,* contra.

HOUCK, J.; SHIELDS, J., and POWELL, J., concur.

This cause was originally commenced in the court of a justice of the peace in and for Windsor township, Morgan county, Ohio, tried and judgment rendered and appealed to the common pleas court of this county.

The cause was submitted to a jury in the common pleas court and a verdict rendered and judgment thereon in the sum of $90.34, in favor of the defendant in error, the plaintiff below, and to reverse this judgment the plaintiff in error prosecutes error to this court.

The plaintiff below, Delbert Bachelor, in his amended petition says, that on the 13th day of August, 1913, he sold and delivered to the defendant below, the plaintiff in error, and at his special instance and request, chickens and butter for the agreed price of $84.52, and which sum the said Kean agreed to pay to him for same, but that he has neglected, failed and refused so to do.

Plaintiff prays for a judgment against defendant for said sum of $84.52, with interest at six per cent. from August 13, 1913.

The defendant filed an amended answer, being in substance as follows:

That on and long prior to June 3d, 1913, he was engaged in the produce business, buying and shipping eggs to Pittsburg; that on said day the plaintiff sold and delivered to him, as and for good and wholesome eggs, and for the agreed price then paid for same, a large lot of eggs packed by plaintiff in cases, for shipment by defendant to Pittsburg, and with the knowledge on the part of plaintiff that they would be so shipped, without inspection or examination by defendant, and they were shipped by him without inspection; that 401½ dozens of said lot of eggs were unhealthy, decayed and spoiled; but said condition of said eggs was not made known at said time to defendant by plaintiff, nor did defendant know of their condition; that by reason of the premises defendant has been damaged in the sum of $74.28, for which amount he prays judgment against the plaintiff.

The plaintiff's reply admits that he sold and delivered the eggs to defendant at an agreed price, which was paid; that they were packed in cases, but denies each, all and every other statement and allegation in the amended answer of defendant.

The plaintiff in error seeks to reverse the judgment below for two reasons:

1. He relies upon the provisions of Section 12760 of the General Code of Ohio.

2. That the court erred in its charge to the jury.

Section 12760 of the General Code is as follows:

"Whoever sells, offers for sale or has in possession with intent to sell, diseased corrupted, adulterated or unwholesome provisions without making the condition thereof known to the buyer, shall be fined not more than fifty dollars or imprisoned twenty days, or both."

Counsel for plaintiff in error contends, that by the provisions of the above penal statute, decayed and unwholesome eggs must

not be placed upon the market; that they are not the legitimate subject of sale and traffic, unless their condition is made known to the buyer; that no express warranty is necessary, nor is any false representation or deceit requisite, nor is knowledge upon the part of the seller necessary to be alleged or proved by the defendant below.

The action at bar is a civil one and not of a criminal nature, and we think it is a well established principle in law that one who pursues a civil remedy can not claim favor under the provisions of a criminal or penal statute to make out his case. The criminal statute in question does not change in any way the well established rules of evidence, or the proof required in cases growing out of the sale and delivery of merchandise where damages are sought, nor does it change the rule of law governing express or implied warranties, as relates to the seller and buyer of merchandise.

Then, we are led to inquire, what is the law governing the case at bar?

In the absence of any express affirmation or statement to such effect, certain warranties are always implied in every contract, relating to the sale and purchase of merchandise.

There is an implied warranty that the seller is the owner of the goods which he offers for sale, and that he has the right to sell same; that at the time and place of delivery the buyer shall have and enjoy quiet possession of the goods, and that the same will be free from any charge or claim of any third person.

And we are of the opinion that from the usages of trade that where eggs were sold, as in this case, to a shipper when the opportunity for inspection is slight, if at all, that there is an implied warranty from the seller to the buyer, that the eggs are fit for the purpose for which they are sold, i. e., shipping purposes, and that they are merchantable and not spoiled or decayed at the time of their delivery to the purchaser.

We are now led to inquire—what was the condition of the eggs, involved in this case, at the time of their delivery to the plaintiff in error?

The record discloses that the eggs were purchased by Bachelor of farmers in his community, during the week prior to June 3d, 1913, and they were packed in egg cases and delivered on that day to Kean, the purchaser; that the fillers were dry, but the cases a little wet; that Kean saw the damp cases but did not open any of them or inspect any of the eggs, but accepted them and shipped them the same day to Pittsburg; that four days later he was informed, by consignee in Pittsburg, that a large part of the eggs he purchased of Bachelor were spoiled and decayed.

Can it be inferred from these facts that the eggs were spoiled, decayed and unmerchantabe, on the 3d day of June, when Bachelor delivered them to Kean, because four days later they were in that condition in Pittsburg?

The purchaser had an opportunity to examine the eggs when they were delivered to him, but he did not elect so to do; he saw that the cases were damp, but made no complaint to the seller; if the dampness of the cases would have a tendency to cause the eggs to decay or spoil more rapidly, by reason of that fact, the purchaser was placed upon inquiry and should have applied the test, or made an inspection of the eggs, and if he had done so and found them decayed or spoiled he would have been under no legal obligation to have accepted them.

Speaking from the record, the evidence does not show that at the time of the delivery of the eggs, on June 3d, 1913, that they were spoiled, decayed or unmerchantable and we can not assume from the facts and circumstances, as disclosed by the evidence, that they were spoiled or decayed at said time.

All the law required of the seller in this case was that the eggs should be merchantable, and not in an unwholesome condition, at the time of the delivery, and that there could be no implied warranty that they would be merchantable, or free from decay four days later, and after the purchaser had shipped them to Pittsburg.

The question to be determined here is not the condition of the eggs at Pittsburg, but what was the condition of the eggs on the 3d day of June, 1913, when Kean accepted them from Bachelor?

Answering this inquiry from the evidence as disclosed by the record, they were merchantable and not decayed or spoiled and that is all that the law requires of the defendant in error in the premises.

We have examined the charge of the court, and we are of the opinion that it is a clear and concise statement of the law governing the facts in this case, and therefore we find no error in the charge of the court.

As we view this case, we find no error in the record, which is prejudicial to the rights of the plaintiff in error, and, therefore, we are of the opinion that the judgment below is right and should be affirmed. The judgment of the common pleas court is affirmed at the costs of the plaintiff in error.