NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 18-3165

———————

UNITED STATES OF AMERICA

v.

JAMAR LYNN MCMILLAN,
Appellant

———————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. No. 1-15-cr-00305-001)
District Judge: Honorable Christopher C. Conner

———————

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 3, 2019

Before: RESTREPO, PORTER and FISHER, *Circuit Judges*.

(Opinion Filed: May 29, 2019)

———————

OPINION[*]

———————

FISHER, *Circuit Judge*.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Jamar McMillan appeals his conviction for possession with intent to distribute heroin, phencyclidine (PCP), and synthetic marijuana; possession of a firearm in furtherance of drug trafficking; and being a felon in possession of a firearm. He also challenges his designation as a career offender for sentencing purposes. We will affirm his conviction and sentence.

## I.

Officer Nicholas Licata of the Harrisburg Bureau of Police received an internal Bureau email stating that Jamar McMillan was a person of interest in an arson. The email indicated that McMillan drove his girlfriend's black Lexus and white Jeep, was residing at a particular address, and that "[s]omeone close to the investigation" said McMillan "ma[de] his living by dealing drugs."[1] McMillan was also the subject of an outstanding arrest warrant. Officer Licata set out to run surveillance at McMillan's suspected address.

When Officer Licata arrived, he saw McMillan leave the house, walk to a black Lexus, "mill[] around for a few minutes," and then walk back inside.[2] Officer Licata did not attempt to arrest McMillan at that time, but returned two days later after confirming that the warrant for his arrest was still active. McMillan, the black Lexus, and a white Jeep were at the residence, and this time another man was there with McMillan. The two men went to the Lexus, where McMillan took child seats from the trunk and gave them to

---

[1] App. 71.
[2] App. 349.

2

the second man, who transferred them to the white Jeep. McMillan then went up to the driver's door of the Lexus and "lean[ed] in . . . doing something in the area of the center console in the driver's seat area."[3]

At this point, backup officers began to arrive, and the individual with McMillan "[took] off running."[4] McMillan paused briefly, but then closed the driver's door of the Lexus and ran. The officers stopped him, arrested him, and searched him. They found a key to a Lexus, a cell phone, a vial containing brown liquid—which Officer Licata recognized as PCP—a "corner tied bag" of what appeared to be synthetic marijuana, and four bundles of heroin (with approximately ten bags per bundle).[5] McMillan had no paraphernalia typical for a heroin user, such as syringes, spoons, pipes, or lighters.

Officer Licata next searched the Lexus "based on the fact that [he] saw Mr. McMillan inside of the vehicle moving items around, as well as the drugs that he possessed."[6] On the driver's seat, Officer Licata found a pouch that contained a loaded .45 caliber gun and a facemask. Officers also discovered another small bag of suspected synthetic marijuana in the trunk.

---

[3] App. 350.
[4] App. 350.
[5] App. 351. Much of what appeared to be heroin turned out to be fake, and the synthetic marijuana weighed less than thirty grams. Officer Licata testified that heroin users might use a few bags to three bundles daily depending on personal tolerance, but that a vial of PCP is something usually found on a dealer, not a user.
[6] App. 170.

3

McMillan was charged with possession with intent to distribute heroin, PCP, and synthetic marijuana, as well as possession of the firearm in furtherance of drug trafficking and being a felon in possession of a firearm.[7] McMillan moved to suppress evidence recovered from the Lexus, arguing that the officers lacked probable cause for the search. The District Court denied the motion.[8] McMillan's case went to trial, and a jury found him guilty on all five counts. He was convicted and sentenced to 240 months' imprisonment after the court determined that his two prior Pennsylvania drug convictions[9] were predicate "controlled substance" offenses under the U.S. Sentencing Guidelines career offender enhancement.[10]

## II.[11]

McMillan challenges his conviction, arguing that the District Court erred in denying his motion to suppress. In reviewing the denial of a motion to suppress, we review factual findings for clear error, and exercise plenary review over application of law to fact.[12] McMillan also challenges his sentence, arguing that the court erred in classifying him as a career offender. Our review of whether an offense constitutes a

---

[7] The operative five-count indictment charged McMillan under 21 U.S.C. § 841(a)(1) and (b)(1)(C), 18 U.S.C. § 924(c)(1)(A), and 18 U.S.C. § 922(g).

[8] McMillan later sought reconsideration of his motion to suppress. The District Court denied reconsideration.

[9] *See* 35 Pa. Stat. Ann. § 780-113(a)(30).

[10] U.S.S.G. §§ 4B1.1(a), 4B1.2(b).

[11] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[12] *United States v. Burnett*, 773 F.3d 122, 130 (3d Cir. 2014).

controlled substances offense for the purpose of career offender status under the Guidelines is plenary.[13]

## A.

McMillan argues that the District Court erred in denying his motion to suppress because officers searched his vehicle without a warrant or probable cause. Under the "automobile exception," police may conduct a warrantless search of a vehicle without offending the Fourth Amendment if they have probable cause to believe contraband is in the vehicle.[14] This extends to containers found in a vehicle when an officer has "probable cause to believe contraband or evidence is contained" therein.[15] We evaluate "probable cause" in light of all of the circumstances leading to a search.[16] If circumstances "indicate[] a fair probability" of finding contraband, there is probable cause.[17]

McMillan argues that the nonspecific tip that he dealt drugs, his flight from officers, the drugs on him at the time of his arrest, and his proximity to the Lexus did not amount to probable cause because officers did not see him engage in drug transactions or carry a firearm, and because they did not see contraband in the Lexus before the search.

---

[13] *United States v. Shabazz*, 233 F.3d 730, 731 (3d Cir. 2000).

[14] *Maryland v. Dyson*, 527 U.S. 465, 467 (1999) (per curiam) (citing *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam)).

[15] *California v. Acevedo*, 500 U.S. 565, 580 (1991).

[16] *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

[17] *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002); *see also Ornelas v. United States*, 517 U.S. 690, 696 (1996) ("[P]robable cause to search [exists] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found[.]").

We disagree. The record demonstrates that there was at least a fair probability of finding contraband in the Lexus, justifying the search. First, there was the tip from a source who alleged that McMillan sold drugs for a living. Second, Officer Licata saw McMillan in the Lexus doing something near the center console. Third, when McMillan saw the officers moving in he closed the door of the Lexus and ran. This sudden and deliberate flight suggested wrongdoing.[18] Consistent with the tip that McMillan sold drugs, there were drugs in McMillan's pockets and indicia that McMillan was a dealer rather than a user. Based on the totality of this circumstantial evidence, there was probable cause to search the vehicle for contraband.[19]

B.

A defendant being sentenced for a controlled substances offense who has two prior "controlled substance" convictions is a career offender under the U.S. Sentencing Guidelines.[20] Determining whether a conviction is a "controlled substance" conviction requires comparing the elements of the statute of conviction with the Guidelines definition.[21] If the statute of conviction is overbroad, such that it criminalizes more conduct than the Guidelines definition, then it cannot be a qualifying offense.[22]

---

[18] *See United States v. Laville*, 480 F.3d 187, 195 (3d Cir. 2007).
[19] *See Burton*, 288 F.3d at 103.
[20] U.S.S.G. § 4B1.1(a).
[21] *United States v. Glass*, 904 F.3d 319, 321 (3d Cir. 2018).
[22] *Id.*

McMillan argues that his two prior convictions under a Pennsylvania drug offenses statute[23] are not "controlled substance" offenses because the statute criminalizes mere offers to buy or sell. That argument is foreclosed by our precedent,[24] and a panel of this Court cannot abrogate that precedent.[25] McMillan argues that this Court erred in our earlier consideration of the Pennsylvania statute of conviction because we failed to consider case law from the Pennsylvania Superior Court criminalizing mere "solicitation."[26] He argues that the cited Pennsylvania Superior Court case shows a "realistic probability" that Pennsylvania uses his statute of conviction to prosecute individuals who offer to buy or sell controlled substances.[27] However, in another recent precedential opinion, this Court specifically considered the Pennsylvania Superior Court case McMillan points to, and decided that it does not undermine our determination that the Pennsylvania statute does not criminalize mere "offers to sell," nor is the statute otherwise overbroad.[28]

---

[23] *See* 35 Pa. Stat. Ann. § 780-113(a)(30). McMillan's convictions included a 2003 conviction for possession with intent to manufacture or deliver cocaine and a 2005 conviction for unlawful delivery of a controlled substance.

[24] *See Glass*, 904 F.3d at 324.

[25] 3d Cir. I.O.P. 9.1 (2018); *United States v. Tann*, 577 F.3d 533, 541 (3d Cir. 2009).

[26] Appellant's Br. 15 (citing *Commonwealth v. Donahue*, 630 A.2d 1238 (Pa. Super. Ct. 1993)).

[27] Appellant's Br. 16 (citing *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

[28] *United States v. Daniels*, 915 F.3d 148, 163-64 (3d Cir. 2019) ("Daniels purportedly cites to an authority suggesting that Pennsylvania does in fact prosecute offers to sell. . . . We do not agree." (citing *Donahue*, 630 A.2d at 1242-44)).

## III.

For the reasons stated in this opinion, we will affirm the conviction and sentence.