**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1051
_____

KOBE PINKNEY

v.

MEADVILLE, Pennsylvania; PATROLMAN JARED FRUM;
ALLEGHENY COLLEGE; DUNCAN FREELAND; JOE HALL

Jared Frum,
Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. No. 1-19-cv-00167)
Magistrate Judge: Honorable Richard A. Lanzillo
_____

Argued April 26, 2022
Before:  HARDIMAN, NYGAARD and FISHER, *Circuit Judges*.

(Filed: May 23, 2022)

Patrick M. Carey
G. Michael Garcia, II
Marshall Dennehey Warner Coleman & Goggin
717 State Street, Suite 701
Erie, PA 16501

Carol A. VanderWoude   ***ARGUED***
Marshall Dennehey Warner Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA 19103
        *Counsel for Appellant Patrolman Jared Frum and City of Meadville*

Earl D. Raynor, Jr.   **ARGUED**
3rd Floor, Box 103
1800 John F. Kennedy Boulevard
Philadelphia, PA 19103
        *Counsel for Appellee Kobe Pinkney*

Brian J. Willett
Reed Smith
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
        *Counsel for Appellees Allegheny College, Duncan Freeland and Joe Hall*

_____

OPINION*
_____

FISHER, *Circuit Judge*.

One Saturday night at a bar in Meadville, a man sucker-punched a patron and then walked out. The patron, Rhet Happel, was a student at Allegheny College. He was severely injured. The Meadville police began investigating the assault. A few days later, Officer Jared Frum interviewed another Allegheny student, Duncan Freeland. According to Officer Frum's incident report, Freeland said that a photo of plaintiff Kobe Pinkney "looked an awful lot like" the assailant.[1] As a result of Freeland's identification, Pinkney was arrested for the assault, but the charges were later withdrawn. Pinkney then sued Officer Frum and others under 42 U.S.C. § 1983 for violation of his constitutional rights. Frum moved to dismiss the complaint, arguing he is entitled to qualified immunity. The

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.
[1] App. 73.

2

District Court denied the motion. Frum appeals. We will vacate and remand.[2]

Officer Frum argues that the District Court erred in denying his motion to dismiss on qualified immunity grounds. To determine whether qualified immunity applies, "we ask (1) whether the officer violated a constitutional right, and (2) whether the right was clearly established, such that 'it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"[3]

Because this appeal comes to us at the motion to dismiss stage, the first qualified immunity question, stated more precisely, is whether the complaint states a claim for a constitutional violation.[4] As relevant to this appeal, Pinkney's claims against Frum are for false arrest, false imprisonment, and malicious prosecution.[5] All these claims are based on a lack of probable cause, so "the constitutional violation question in this case turns on whether 'a reasonable officer could have believed that probable cause existed to arrest'

---

[2] The District Court had jurisdiction under 28 U.S.C. §§ 1331(federal questions) and 1343 (civil rights actions). We have jurisdiction under 28 U.S.C. § 1291 (final decisions of district courts). It is "well established" that, under the collateral order doctrine, "a district court's order rejecting qualified immunity at the motion-to-dismiss stage of a proceeding is a 'final decision' within the meaning of § 1291." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009). We review the District Court's decision de novo. *Dennis v. City of Phila.*, 19 F.4th 279, 284 (3d Cir. 2021).

[3] *Lamont v. New Jersey*, 637 F.3d 177, 182 (3d Cir. 2011) (alteration in original) (quoting *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001)).

[4] *See James v. City of Wilkes-Barre*, 700 F.3d 675, 679–80 (3d Cir. 2012).

[5] False arrest is arrest without probable cause. *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020). False imprisonment occurs where the police detain someone pursuant to an arrest that lacked probable cause. *Id.* at 202. Malicious prosecution is a criminal proceeding initiated without probable cause that ends in the plaintiff's favor, where the defendants acted maliciously and the plaintiff was deprived of his liberty. *Id.* at 203.

the plaintiff at that time."[6] Therefore, we consider whether the complaint adequately alleges a lack of probable cause.

Police may not make an arrest except "upon probable cause, supported by Oath or affirmation."[7] There is probable cause to arrest "whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested."[8] A "credible report from a credible eyewitness" typically "establish[es] probable cause to arrest."[9]

Pinkney was arrested pursuant to a warrant. A plaintiff in such a case must show "(1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'"[10]

The District Court examined Officer Frum's incident report, which is an internal

---

[6] *See Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017) (quoting *Blaylock v. City of Phila.*, 504 F.3d 405, 411 (3d Cir. 2007)) (discussing false arrest and malicious prosecution); *Harvard*, 973 F.3d at 199 (explaining that false imprisonment charges fail if there was probable cause).

[7] U.S. Const. amend. IV.

[8] *Andrews*, 853 F.3d at 701 n.13 (quoting *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002)).

[9] *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 (3d Cir. 2000).

[10] *Wilson v. Russo*, 212 F.3d 781, 786–87 (3d Cir. 2000) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)).

police department document, and his probable cause affidavit, which he submitted to a Pennsylvania judge to obtain the warrant to arrest Pinkney. Both of those documents were attached to the complaint. Officer Frum wrote in the incident report that Freeland said Pinkney "looked an awful lot like" the assailant.[11] But Frum's affidavit stated, in definitive fashion, that Freeland "recognized Pinkney as the black male that punched Happel."[12] The District Court held that in light of this difference, the complaint adequately alleged that Officer Frum made a material false statement in the affidavit with reckless disregard for the truth.

To his motion to dismiss, Officer Frum attached the audio recording of his interview with Freeland. The District Court, without explanation, declined to consider it. Officer Frum argues the District Court should have considered the recording and, further, that we should consider it on appeal. He says the recording shows Freeland identified Pinkney definitively, not equivocally. Therefore, he contends, the complaint does not succeed in alleging that he recklessly disregarded the truth in his affidavit or that he lacked probable cause to arrest Pinkney.

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the district court "may consider *only* the allegations contained in the pleading."[13]

---

[11] App. 73.
[12] App. 176.
[13] *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016) (*quoting Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co.*, 768 F.3d 284, 290 (3d Cir. 2014)).

Although this rule is "phrased in relatively strict terms, we have declined to interpret [it] narrowly."[14] We have held that "courts may consider 'document[s] *integral to or explicitly relied* upon in the complaint,' or any 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'"[15] Courts may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case."[16]

The audio recording of Officer Frum's interview of Freeland appears to be the contemporaneous record of the conversation on which the incident report and the probable cause affidavit were based. Both of those documents clearly could be considered because they were attached to and cited in the complaint. Our case law establishes that "what is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited."[17] The complaint is, fundamentally, based on the Freeland interview. It was in the interview that Freeland made the statements that either did or did not provide probable

---

[14] *Id.* at 133 n.7.

[15] *Id.* (first quoting *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), then quoting *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

[16] *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (alteration in original) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

[17] *Burlington*, 114 F.3d at 1426 (quoting *In re Donald J. Trump Casino Secs. Litig.–Taj Mahal Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993)).

cause to arrest Pinkney. The incident report and probable cause affidavit are written summaries, but the interview is what they summarize. If authentic, the audio recording is the best information available and should have been considered on the motion to dismiss.[18]

At oral argument, Pinkney's counsel stated that Pinkney does not stipulate to the authenticity of the recording. Officer Frum's counsel, in rebuttal, pointed out that Pinkney never argued in the District Court that the recording should not be considered, nor contested its authenticity—despite the fact that he opposed the motion to dismiss and also filed a supplemental brief in opposition. On remand, the District Court may rule on whether Pinkney forfeited, in that Court, the issue of whether the recording is authentic and may be considered. If the argument is not forfeited, the District Court may determine what next steps would be appropriate.

We will not accept Officer Frum's invitation to consider the audio ourselves. "We ordinarily decline to consider issues not decided by a district court, choosing instead to allow that court to consider them in the first instance."[19]

For these reasons, we will vacate the order denying dismissal and remand for further proceedings.

---

[18] Judge Nygaard would leave to the District Court in the first instance the determination of whether the audio recording is integral to the complaint such that it should be considered on a motion to dismiss, or is not, and may be considered only on a motion for summary judgment.

[19] *Forestal Guarani S.A. v. Daros Int'l, Inc.*, 613 F.3d 395, 401 (3d Cir. 2010).